BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
  Jason L. Peltz (admitted pro hac vice)
  jason.peltz@bartlit-beck.com
  Paul J. Skiermont (admitted pro hac vice)
  paul.skiermont@bartlit-beck.com
  Michael J. Valaik (admitted pro hac vice)
  michael.valaik@bartlit-beck.com
54 W. Hubbard St. Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile:  (312) 494-4440

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Steven M. Anderson (Bar No. 144014)
  stevenanderson@quinnemanuel.com
  Michael E. Williams (Bar No. 181299)
  michaelwilliams@quinnemanuel.com
  David Sergenian (Bar No. 230174)
  davidsergenian@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant,
The DIRECTV Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Phoenix Solutions, Inc., | CASE NO. CV 08-984 MRP (SSx) |
| Plaintiff, | **DIRECTV'S OPPOSITION TO PLAINTIFF'S MOTION TO ALTER OR AMEND ORDER / MOTION FOR RECONSIDERATION** |
| vs. | |
| The DIRECTV Group, Inc., | Hon. Mariana R. Pfaelzer |
| Defendant. | Hearing Date: November 2, 2009<br>Hearing Time: 10 A.M.<br>Courtroom: 12 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 1

    A.    The Katz decision supports the Court's entry of summary judgment in favor of DIRECTV. .................................................................... 1

    B.    Phoenix's accusation that DIRECTV counsel acted unethically is baseless. ....................................................................................... 3

    C.    Phoenix is not entitled to additional discovery. ..................................... 6

    D.    Phoenix's motion violates Local Rule 7-18. ........................................ 10

CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Ashton-Tate Corp. v. Ross*,
   916 F.2d 516, 520 (9th Cir.1990) .................................................................. 6

*Leasing, Inc. v. Compania Anonima Venezolana de Navegacion*,
   93 F.3d 675 (9th Cir. 1996) ........................................................................... 5

*Ronald A. Katz Technology Licensing, L.P. v. The DIRECTV Group, Inc., et al.*, Case
   No. 07-CV-2322-RGK .......................................................................... passim

*Werner v. Liberty Life Assur. Co. of Boston*,
   2009 WL 1956235, *1 (9th Cir.) ................................................................... 6

**Other Authorities**

Model Rule Prof'l Conduct R. 3.3 cmt. 4 ................................................................ 3, 4

# INTRODUCTION

Phoenix's sole basis for its motion to alter or amend order and/or for reconsideration is the unpublished decision in *Ronald A. Katz Technology Licensing, L.P. v. The DIRECTV Group, Inc., et al.,* Case No. 07-CV-2322-RGK. There, the court deferred on the issue of "direction or control" because it found that neither party briefed the key issue of whether DIRECTV directed or controlled each element of the *Katz* asserted patent claims. Here, in contrast, DIRECTV did brief and argue whether DIRECTV directs or controls West with respect to the elements of Phoenix's asserted patent claims – and the Court rightfully decided that it did not. As a result, not only is the *Katz* result inapposite, the *Katz* reasoning supports DIRECTV's motion because the *Katz* court adopted the same legal analysis that DIRECTV urged the Court to adopt in this case. As a result, Phoenix's motion for reconsideration should be denied.

# ARGUMENT

## A. The Katz decision supports the Court's entry of summary judgment in favor of DIRECTV.

*Katz* did not raise a single factual or legal issue that undermines or contradicts any DIRECTV argument made in support of its motion. In fact, *Katz's* reasoning supports the Court's entry of summary judgment in this case. In both cases, DIRECTV pointed out that West controls the underlying call-processing architecture and software. In both cases, the plaintiffs alleged that DIRECTV controlled aspects of the technology accused of infringement in the respective cases. In *Katz*, the court concluded that neither DIRECTV nor the plaintiff even attempted to link the control in dispute to the actual technology claimed and accused of infringement:

> Although the parties appear to disagree about the amount of control and direction DirecTV exerts over West, the Court notes that they are discussing two different issues. DirecTV points out that West controlled the underlying architecture and proprietary software. Katz points out

that DirecTV directed the specific implementation of the IVR applications. Thus, it appears that DirecTV had control over the IVR applications that used hardware and software controlled by West. **However, neither party attempts to link what DirecTV does or does not control/direct with the specific technology accused of infringement.**

*Id.* at 15 (emphasis added).   In contrast, DIRECTV's motion in this case did link its control argument to the claimed technology and showed that it does not control the specific technology accused of infringement.

Phoenix argues that Katz found disputed issues of fact related to DIRECTV's control over West.  (Phoenix Motion at 4)  But as the foregoing illustrates, *Katz* pointed out that the parties were "discussing two different issues" and needed to do what DIRECTV did in this case, i.e., link the control issue to the specific technology claimed in the patents and accused of infringement.  Therefore, rather than contradict it, *Katz* adopted the legal framework DIRECTV urged in this case.

Phoenix contends that the *Katz* decision is relevant to "whether the direction and control test applies to system claims…." (Phoenix Motion at 4).  But *Katz* did not consider or address Phoenix's system versus method claim argument.  Moreover, Phoenix's argument is puzzling because Phoenix would only have a point if *Katz* rejected the "direction or control" test regarding system claims, but instead *Katz* applied the "direction or control" analysis to the asserted system claim – just as DIRECTV urged the Court to do here.  *Katz* therefore rejected Phoenix's argument that system claims are not subject to a "direction or control" analysis.  As such, Katz is consistent with the cases DIRECTV cited in support of its motion for summary judgment of non-infringement that also applied the "direction or control" test to system claims.  *See* DIRECTV's Reply Memorandum in Support of Summary Judgment at pp. 2-7.

Phoenix also contends that *Katz* considered "whether the direct and control test should be applied to an infringing system as a whole or to individual infringing components of an accused system…." (Phoenix Motion at 4)  But *Katz's* focus on DIRECTV's direction or control of the specific technology claimed in the RAKTL patents and accused of infringement is exactly the standard that DIRECTV urged the Court to adopt here.  *See* DIRECTV'S Opening Memorandum in Support of Summary Judgment at pp. 10-12; DIRECTV's Reply Memorandum in Support of Summary Judgment at pp. 2-7.  Phoenix disputes this standard.  *See, e.g.*, Phoenix Memorandum in Opposition at pp. 3-4, 12.  *Katz's* analysis is consistent with DIRECTV's approach; not the Phoenix approach.

Phoenix further contends that the *Katz* decision is relevant to "whether the factually intensive issue of direction and control should be decided by a court summarily…." (Phoenix Motion at 4)  But that contention is simply false.  *Katz* did not comment on whether summary judgment is appropriate in the direction or control context.  Instead, *Katz* held that the parties failed to link their "direction or control" facts to the claimed and accused technology.  *Katz* lends no support to the argument that a court should not grant summary judgment on direction and control, nor does Phoenix cite to any authority supporting the proposition that summary judgment is somehow inappropriate for direction and control issues.

### B. Phoenix's accusation that DIRECTV counsel acted unethically is baseless.

Phoenix accuses DIRECTV counsel of violating Model Rule of Conduct 3.3 by not citing the unpublished *Katz* ruling.  But the rule requires that parties cite only decisions "directly adverse."  *Katz* is the opposite of directly adverse – it supports DIRECTV's granted motion.  Here, DIRECTV advocated the *same* legal standard applied in *Katz*.  As such, *Katz* cannot be directly adverse. *See* Model Rule Prof'l Conduct R. 3.3 cmt. 4 ("[A]n advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing

party. *The underlying concept is that <u>legal</u> argument is a discussion seeking to determine the legal premises properly applicable to the case*.") (emphasis added).

In addition, the factual issues presented to this Court and *Katz* were entirely different because the *Katz* patent claims covered different technology than the Phoenix claims. For example, the *Katz* patents claim:

- "A process for determining the acceptability of calls and executing formats in association with a communication facility including remote terminal apparatus for individual callers, wherein said remote terminal apparatus includes a telephonic instrument with voice communication means and digital input means in the form of an array of alphabetic, numeric buttons for providing data…"; and

- "An analysis control system for use in a mail order facility or the like, said analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals comprises voice communication means and digital input means in the form of an array of buttons for providing data…."

(Sergenian Decl., Ex. A, Katz Patents, U.S. Patent Nos. 6,512,415, claim 2 and 5,898,762, claim 30) As such, the issue in *Katz* was whether DIRECTV directed or controlled the RAKTL claim elements.

The Phoenix patents, on the other hand, are directed to natural language speech processing and claim things such as:

- "a speech recognition engine executing on a network server system" ('125 Patent, claim 1);
- "distributed speech processing system" (*id.*);
- "configuring a set of speech recognition operations to be performed by the network server system based on computing resources available to such system" (*id.*);
- "a continuous speech recognition engine" ('172 Patent, claim 1);

- "a first linguistic analysis" (*id*.); ('714 Patent, claim 1);
- "completing recognition of the speech utterance using software routines executing at the network server system" (*id*.);
- "a receiving routine executing on the server computing system for receiving speech data" ('977 Patent, claim 1);
- "completing recognition" (*id*.);
- "signal processing functions required to generate said recognized speech query can be allocated between a client platform and the server computing system as needed based on computing resources available" (*id*.).

Thus, the issue before this Court was whether DIRECTV directed or controlled the Phoenix claim elements. This Court's conclusion that DIRECTV does not direct or control Phoenix's alleged claim elements is not affected in any way by another court's conclusion that the record before it was insufficient to determine whether DIRECTV directs or controls the distinct alleged claims of a different plaintiff.

Furthermore, even if the *Katz* patent claims were somehow similar to Phoenix's patent claims (they are not), there is no factual inconsistency between that court denying summary judgment and this Court granting it. In addressing a motion directed to numerous issues in the case, *Katz* found that the record before it was insufficient to grant summary judgment on the issue of direction and control because "neither party attempt[ed] to link what DirecTV does or does not control/direct with the specific technology accused of infringement." Trojan Decl., Exhibit 1 at 15. Here, in contrast, DIRECTV did exactly what *Katz* required: "attempt[] to link what DIRECTV does or does not control/direct with the specific technology accused of infringement." In other words, that *Katz* denied summary judgment solely because arguments were not briefed is irrelevant given that the issue was briefed here and the two cases have different factual records. *Cf. Leasing, Inc. v. Compania Anonima Venezolana de Navegacion*, 93 F.3d 675 (9th Cir. 1996) (holding that counsel need

not have cited previous authority where the previous authority did not reach the merits of the issue: "The order of the Ninth Circuit denying the petition for writ of mandamus did not reach the merits of the transfer order; it merely held that petitioners had not demonstrated the case warranted an intervention of the court through the writ of mandamus. Consequently, counsel did not knowingly fail to disclose to the district court controlling authority directly adverse to the position she advocated.") (internal citations omitted).

### C. Phoenix is not entitled to additional discovery.

Now that Phoenix has lost summary judgment, it also contends that taking more discovery, such as the deposition of Jeff Knight, might provide facts supporting its position. But Phoenix has defaulted – it cannot wait until it loses summary judgment and then say it needs more discovery; the proper time to seek more discovery pursuant to Rule 56(f) is prior to the summary judgment hearing:

> The district court did not abuse its discretion in declining to reopen discovery after it had granted summary judgment. A request for continuance to conduct discovery should be made prior to the summary judgment hearing. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir.1990). However, Werner did not seek additional discovery until after the district court had granted summary judgment in favor of respondents.

*Werner v. Liberty Life Assur. Co. of Boston*, 2009 WL 1956235, *1 (9th Cir.).

Moreover, Phoenix has known about the involvement of Jeff Knight since DIRECTV's initial Rule 26 disclosures in May 2008, which listed Mr. Knight as the <u>very first witness</u> in a list that included only two names. (Sergenian Decl., Ex. B, May 30, 2008 DIRECTV Rule 26(a) Disclosures.)

Phoenix has been aware of the direction and control issues for at least 16 months, and despite over a year of discovery and millions of pages of documents it

1  has been unable to uncover any material facts showing that DIRECTV directs or
2  controls the specific technology accused of infringement.  Incredibly, Phoenix argues
3  that it "had no reason to pursue discovery on the [direction and control] issue until
4  only recently[, because] Defendant did not disclose its direction and control
5  contentions until it revealed its intent to file its Motion for Summary Judgment."
6  (Phoenix Motion at 3)  But, of course, Phoenix has known all along that it would
7  need to establish direction and control:

- In August 2007, in response to Phoenix's original letter offering a license, DIRECTV told Phoenix: "Further, please note that **DIRECTV does not provide or operate any IVR technology**, either with or without voice recognition capabilities.  Rather, DIRECTV utilizes the services of a major IVR vendor who is responsible for the systems, software and processes used in providing IVR services to its many clients, including DIRECTV.  We do not have access to detailed information about the systems used internally by our vendor." (Sergenian Decl., Ex. C, Aug. 3, 2007 Coslick to Gross)

- In January 2008, DIRECTV told Phoenix, "We have been up front with you from the outset that **DIRECTV does not have the type of access to or knowledge of the West IVR system** that is needed to evaluate your claims.  While we appreciate your earlier correspondence identified technologies that might be in used an IVR system, **as a customer with no control over West or its IVR system**, we simply do not have the ability to make an informed assessment of that information."  (Sergenian Decl., Ex. D, Jan. 31, 2008 Coslick to Gross)

- In January 2008, Phoenix itself admitted that direction and control is the key inquiry: "The law is clear that **DIRECTV is still liable for direct infringement even when it contracts out to third parties** to perform activities (on its behalf) that infringe the patents."  **Phoenix then cited**

00235.21739/3161224.1

-7-
DIRECTV'S OPPOSITION TO PHOENIX'S MOTION TO ALTER ODER/MOTION FOR RECONSIDERATION

> **the Federal Circuit's decision in** *BMC* and stated: "We do not know who is advising DIRECTV that they do not have independent liability for direct infringement, but this is a serious and potentially costly misunderstanding since **you control and direct the vendor** to operate these systems on your behalf." (Sergenian Decl., Ex. E, Jan. 31, 2008 Gross to Coslick) (emphasis added)

- In February 2008, Phoenix filed its First Amended Complaint, acknowledging that DIRECTV's vendor (West) operates the IVR: "Further upon information and belief, **the third party operates part or all of such IVR system** on Defendant's behalf based on a contractual obligation to Defendant." (Sergenian Decl., Ex. F, Feb. 14, 2008 First Amended Complaint at p. 4, ¶ 10)  Indeed, the entirety of Phoenix's Complaint is drafted in a manner to attempt to address the direction and control issue. (*Id*. ¶¶ 11-21, 33, 38, 43.)

- In its September 2008 responses to Phoenix interrogatories, DIRECTV reiterated that DIRECTV does not direct and control West: "A separate entity, DIRECTV, Inc., has an arms-length relationship with third-party West Interactive Corp. ("West"), which provides IVR services to DIRECTV, Inc. customers. … The West IVR Services are resident at West's facilities. West's computer system software, software processes, methods, and techniques are propriety to and belong exclusively to West.  DIRECTV, Inc. does not have access to West's code.  West is responsible for its own day-to-day operations, and **DIRECTV, Inc. lacks the legal right to direct or control West's conduct**.  West is responsible for designing; developing; providing operations, maintenance, documentation, and additional support associated with the West IVR Services." (Sergenian Decl., Ex. G, September 26, 2008

1             DIRECTV Responses to Phoenix's First Set of Interrogatories at p. 6-7)

2             (emphasis added)

3     • In June 2009, Phoenix tried to establish direction and control evidence at

4        the deposition of the West corporate representative who knew most

5        about how the West technology worked. (*See, e.g.,* Sergenian Decl., Ex.

6        H, June 24, 2009 Deposition of Aaron Fisher at 116:2-12; 133:13-134:3;

7        171:20-174:22; 178:15-179:15; 251:21-252:10; 305:6-18)

8     As the foregoing shows, both parties raised the direction or control issue before
9 and throughout litigation. In any event, Phoenix has waived its opportunity to raise
10 its purported need to conduct further discovery because it did not file a Rule 56(f)
11 motion when it opposed DIRECTV's summary judgment motion. Indeed, by the
12 time DIRECTV was preparing to file its summary judgment motion on direction and
13 control in June 2009, Phoenix was so satisfied with the amount of supposed evidence
14 regarding the direction and control issue that it chose not to file a Rule 56(f) affidavit
15 seeking more discovery on the issue, and agreed to proceed with motion practice as
16 long at DIRECTV made available for deposition the witnesses who signed
17 declarations supporting DIRECTV's motion. (Sergenian Decl., Ex. I, June 11, 2009
18 Trojan e-mail to DIRECTV counsel, "As we discussed during the meet and confer
19 for your motion for summary judgment based upon no joint infringement, we will
20 need to depose your declarants concerning their declarations in support of the
21 motion. As we also discussed, you would provide us with the name or names of
22 declarants so that we can schedule their depositions immediately upon the filing of
23 the motion. You agreed to work with us to arrange these important depositions.
24 Otherwise, we would need to request a delay of the motion under Rule 56(f).")
25 Phoenix then deposed DIRECTV's Mike Uhlenkamp and West's Craig Webster
26 regarding direction and control issues before Phoenix's response was due, and both
27 parties cited to these depositions in their briefs.

28

Phoenix also makes the unsupported allegation that DIRECTV purportedly "failed to produce any discovery related to the *Katz* litigation, leaving the Court blind as to the context of the *Katz* Opinion." (Phoenix Motion at 3:4-5; *see also id.* at 3:9-10 ("in order to properly assess the *Katz* Opinion, the Court should also consider the relevant documents produced in *Katz*"). Conspicuously absent is a citation to any Phoenix discovery request seeking documents or information related to the *Katz* litigation or any other patent litigation to which DIRECTV is a party. Phoenix cannot point to any such discovery request because Phoenix never requested documents or information relating to the *Katz* litigation or any other patent litigation. This is true even though the *Katz* litigation was filed as a matter of public record in August 2006—almost two years before Phoenix filed its case against DIRECTV.

Moreover, contrary to Phoenix's implication that it only learned of the *Katz* litigation just before it filed its notice of the *Katz* summary judgment order, Phoenix became aware of the *Katz* litigation no later than the deposition of Michael Uhlenkamp in this case. (Sergenian Decl., Ex. J, Uhlenkamp Dep. at 10, 11; testifying that Mr. Uhlenkamp had been deposed in the *Katz* litigation). Phoenix deposed Mr. Uhlenkamp <u>before</u> it filed its opposition to DIRECTV's motion for summary judgment.

There was no discovery malfeasance on DIRECTV's part. Phoenix's lack of due diligence alone is to blame for Phoenix's purportedly late discovery of the *Katz* litigation (which, as stated, is not relevant to this action in any event).

**D.    Phoenix's motion violates Local Rule 7-18.**

Finally, the Court was aware of the decision in *Katz* prior to rendering its decision here, and therefore Phoenix's motion fails to raise anything new as required by Local Rule 7-18. Plaintiff argues the Court had access to the "44-page" *Katz* ruling for only 24 hours before the Court rendered its decision here. But whether the Court had access to the *Katz* ruling for 24 hours or 24 weeks is irrelevant. The

important point is that the Court had ample time to consider the *Katz* court's mere *two-page* discussion of direction and control, as well as the parties' filings specifically devoted to that ruling.

## CONCLUSION

Here, just as in *Katz*, Phoenix has failed "to link what DIRECTV does or does not control/direct with the specific technology accused of infringement." But, here, unlike in *Katz*, DIRECTV has in fact established without dispute that it does not direct or control West with respect to "the specific technology accused of infringement." Phoenix's motion therefore should be denied.

DATED: October 19, 2009          Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By  */s/Steven M. Anderson*
     Steven M. Anderson
     Attorney for Defendant,
     The DIRECTV Group, Inc.

00235.21739/3161224.1

-11-
DIRECTV'S OPPOSITION TO PHOENIX'S MOTION TO ALTER ODER/MOTION FOR RECONSIDERATION